**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**Northern Division**

Case No. _____

| | | |
|---|---|---|
| RICHARD A. MARKS, JR., | ) | |
| ADMINISTRATOR OF THE | ) | |
| ESTATE OF JUDITH SCHOPPET | ) | |
| MARKS, Deceased, | ) | |
|       Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | Fed. R. Civ. P. 8(a); Local Civil Rule 83.1 |
| | ) | |
| BILLY RAY TURNER and | ) | 28 U.S.C. §§ 1332(a) & 1391(b) |
| ATLANTIC OBX, INC., | ) | |
| a/k/a Atlantic Sewage Control, | ) | |
|       Defendants. | ) | |

NOW COMES Richard A. Marks, Jr., as Administrator of the Estate of Judith Schoppet Marks, by and through the undersigned counsel, complaining of Defendants, Billy Ray Turner and Atlantic OBX, Inc., a/k/a Atlantic Sewage Control, and says as follows:

**INTRODUCTION**

1.     This action arises out of a collision which occurred at or near 10:00 a.m. on July 1, 2021 at or near the intersection of Croatan Highway, a/k/a U.S. Highway 158 ("Highway 158"), and Kitty Hawk Road in which a truck operated by the Defendants crashed into a motor vehicle occupied by Richard A. Marks, Jr. ("Dick Marks") and Judith Schoppet Marks ("Judy Marks") (this collision is hereinafter referred to as the "Collision"). This action asserts a claim against each and both of the Defendants for the wrongful death of Judy Marks which was proximately caused by the wrongdoing of the Defendants which resulted in the Collision and the fatal injuries to Judy Marks.

2. Richard A. Marks, Jr., has been duly appointed Administrator of the Estate of Judith Schoppet Marks, Deceased (the "Administrator"), in both Dare County, North Carolina, and in the City of Hopewell, Virginia, and in this action the Administrator seeks recovery of all damages and relief available against the Defendants on the wrongful death claim asserted in this Complaint.

## PARTIES

3. At all relevant times prior to the Collision Judy Marks was a competent adult citizen and resident of the Commonwealth of Virginia.

4. Dick Marks is and at all relevant times has been a competent adult citizen and resident of the Commonwealth of Virginia.

5. Defendant Atlantic OBX, Inc., a/k/a Atlantic Sewage Control ("Atlantic Sewage"), is a North Carolina corporation with its registered agent and its principal place of business located in Currituck County, North Carolina.

6. Upon information and belief Defendant Billy Ray Turner ("Turner") is a competent adult citizen and resident of Currituck County, North Carolina.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1132(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

8. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of the Eastern District of North Carolina and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Eastern District of North Carolina.

2

## FACTUAL ALLEGATIONS

### Background

9.     Prior to Judy Marks' death on July 1, 2021 Dick Marks and Judy Marks were married for over fifty-seven years and had an extremely loving and caring marital relationship.

10.     Prior to Judy Marks' death on July 1, 2021 Dick and Judy Marks' three adult children (Maureen M. Montgomery, Kathryn M. Anderson, and Richard A. Marks III) each had an extremely loving and caring familial relationship with Judy Marks.

11.     At all relevant times Turner was acting as an employee and/or agent of Atlantic Sewage and was acting in the course and scope of his employment and/or agency.

12.     Turner's work as an employee and/or agent for Atlantic Sewage included the inspection, maintenance, and operation of motor vehicles including one or more commercial motor vehicles which contained large tanks and were used by the Defendants for hauling, transportation, and disposal for-profit of septic and organic waste material.

### The Collision

13.     At all relevant times Highway 158 and Kitty Hawk Road intersected in Kitty Hawk, Dare County, North Carolina (the "Intersection").

14.     At various relevant times, including on July 1, 2021 at and near the Intersection, Turner drove and Atlantic Sewage owned and operated a commercial motor vehicle which contained a large tank and which was used by the Defendants for hauling, transportation, and disposal for-profit of septic and organic waste material (the "Atlantic Sewage Tanker Truck").

15.     At all relevant times on July 1, 2021 prior to and at the time of the Collision, the visibility and road conditions in the area of the Intersection were good in that the traffic lights at

3

the Intersection were fully operational and working properly, the weather was clear and dry, it was daylight, and the roadway was flat and straight with no visual obstructions.

16.     At all relevant times including on July 1, 2021 at and approaching the Intersection there were two lanes of travel for vehicles on Highway 158 which were traveling in the southbound direction (i.e., away from West Lillian Street headed towards Beacon Street); traffic lights faced and controlled the movements of vehicles and drivers in this area in the southbound travel lanes (the "Traffic Lights Controlling Southbound Vehicles").

17.     At all relevant times including on July 1, 2021 at and approaching the Intersection there were two lanes of travel for vehicles on Highway 158 which were traveling in the northbound direction (i.e., away from Beacon Street headed towards West Lillian Street); traffic lights faced and controlled the movements of vehicles and drivers in this area in the northbound travel lanes (the "Traffic Lights Controlling Northbound Vehicles").

18.     At all relevant times including on July 1, 2021 at and approaching the Intersection there was a lane of travel for vehicles on Kitty Hawk Road which were traveling in the eastbound direction (i.e., away from Woodard Road towards North Carolina Highway 12); traffic lights faced and controlled the movements of vehicles and drivers in the eastbound travel lanes (the "Traffic Lights Controlling Eastbound Vehicles").

19.     At all relevant times including on July 1, 2021 at and approaching the Intersection there was a lane of travel for vehicles on Kitty Hawk Road which were traveling in the westbound direction (i.e., away from North Carolina Highway 12 towards Woodard Road); traffic lights faced and controlled the movements of vehicles and drivers in the westbound travel lanes (the "Traffic Lights Controlling Westbound Vehicles").

4

20.    On July 1, 2021 prior to the Collision Dick Marks was operating his 2005 Ford pickup truck (the "Marks 2005 Ford") in a southerly direction in the southbound travel lanes on Highway 158 approaching the Intersection.

21.    On July 1, 2021 prior to and at the time of the Collision Judy Marks was riding as a front seat passenger in the Marks 2005 Ford.

22.    On July 1, 2021 prior to the Collision as the Marks 2005 Ford approached the Intersection the Traffic Lights Controlling Southbound Traffic changed from green to yellow and then from yellow to red; as this occurred southbound traffic approaching the Intersection (including the Marks 2005 Ford) slowed and then stopped without entering the Intersection.

23.    On July 1, 2021 at and around 10:00 a.m., Turner was driving the Atlantic Sewage Tanker Truck in a northbound direction on Highway 158 and was approaching the Intersection.

24.    On July 1, 2021 at and around 10:00 a.m., during a period of time as Turner approached the Intersection, there were yellow Traffic Lights Controlling Northbound Traffic facing him which cautioned and required that Turner and all other northbound motorists take all actions necessary to slow and stop their vehicles prior to the time that the signal lights changed to red.

25.    On July 1, 2021 at and around 10:00 a.m., after the Traffic Lights Controlling Northbound Traffic had been yellow for a period of time, the Traffic Lights Controlling Northbound Traffic changed to red, which prohibited northbound traffic from entering the Intersection and required all northbound traffic, including the Atlantic Sewage Tanker Truck, to come to a stop before entering the Intersection and to remain stopped until the traffic lights changed to green.

5

26. On July 1, 2021 at and around 10:00 a.m., as the Traffic Lights Controlling Northbound Traffic had been yellow for a period of time and then turned red, northbound vehicles ahead of the Atlantic Sewage Tanker Truck slowed and stopped for the red lights.

27. On July 1, 2021 at and around 10:00 a.m., instead of properly slowing and stopping behind the other northbound vehicles Turner suddenly swerved to the right and drove at speed into the Intersection against the red Traffic Lights Controlling Northbound Traffic.

28. Prior to the time and/or as the Atlantic Sewage Tanker Truck drove into the Intersection in the northbound direction against the red Traffic Lights Controlling Northbound Traffic, the Traffic Lights Controlling Westbound Traffic turned green; a westbound vehicle on Kitty Hawk Road on the eastern side of the Intersection moved towards and into the Intersection and was struck by the northbound Atlantic Sewage Tanker Truck as it moved into the Intersection against the red Traffic Lights Controlling Northbound Traffic.

29. After the Atlantic Sewage Tanker Truck entered the Intersection and struck the vehicle, which was westbound on Kitty Hawk Road, the Atlantic Sewage Tanker Truck continued in a generally northbound direction but also careened, tilted, moved towards, and rolled, and struck southbound vehicles on Highway 158 (including the Marks 2005 Ford) which had stopped for the red Traffic Lights Controlling Southbound Traffic.

30. On July 1, 2021 at and around 10:00 a.m., after the Atlantic Sewage Tanker Truck struck the westbound vehicle, in the course of its subsequent movements the Atlantic Sewage Tanker Truck crashed into the Marks 2005 Ford with such great force that it knocked the Marks 2005 Ford into one or more nearby vehicles and thereby subjected Dick and Judy Marks to multiple violent traumatic forces.

6

31.     The Collision and the violent impacts caused by the Atlantic Sewage Tanker Truck caused serious personal injuries to Judy Marks and despite extensive medical care and procedures those injuries caused her death later on July 1, 2021.

## CAUSES OF ACTION

### Count I—Negligence

### (vs. Turner and Atlantic Sewage)

32.     The Administrator incorporates by reference the allegations set forth in paragraphs 1-31 as if fully restated herein.

33.     At all relevant times the Atlantic Sewage Tanker Truck was a "commercial motor vehicle" within the meaning of and was subject to the provisions and requirements of the Federal Motor Carrier Safety Regulations (49 C.F.R. Subchapter B, including in particular Parts 390 to 397) (the "FMCSRs") and the North Carolina Motor Carrier Safety Regulations (14B N.C.A.C. Subchapter 7C) (the "NCMCSRs").

34.     At all relevant times Atlantic Sewage was a "motor carrier" within the meaning of the FMCSRs and the NCMCSRs.

35.     At all relevant times Turner was a "driver" and "employee" of Atlantic Sewage within the meaning of the FMCSRs and the NCMCSRs.

36.     At all relevant times Turner was subject to all provisions, requirements, duties, and responsibilities imposed by the FMCSRs and NCMCSRs, all applicable federal and state statutes and regulations, industry standards, and the common law relating to his qualifications and fitness and/or relating to the condition, inspection, maintenance, repair, operation, and driving of the Atlantic Sewage Tanker Truck.

7

37.     At all relevant times Turner owed the following duties to drivers, passengers, and pedestrians on and about public roads (including Judy Marks) to use at least reasonable care under the circumstances:

> a)     to operate, inspect, equip, and repair the Atlantic Sewage Tanker Truck in a manner consistent with the standard of care for a commercial motor vehicle driver, in compliance with all applicable federal and state statutes, regulations, and laws, and in a manner reasonable under the circumstances then presented;
>
> b)     to meet all knowledge, qualifications, fitness, driving skills, medical, and other requirements of the FMCSRs, the NCMCSRs, other federal and state laws and regulations, industry standards, and the common law at all times with respect to operating the Atlantic Sewage Tanker Truck;
>
> c)     to meet all vehicle condition, equipment, inspection, fitness, weight, safety, and other requirements of the FMCSRs, the NCMCSRs, other federal and state law laws and regulations, industry standards, and the common law at all times with respect to the Atlantic Sewage Tanker Truck;
>
> d)     to monitor the Atlantic Sewage Tanker Truck and related equipment, to follow all applicable safety programs and plans, and to take all other steps and measures to ensure that the large and heavy commercial motor vehicles used were operated and driven prudently and safely.

38.     At all relevant times Turner knew and/or should have known that it was reasonably foreseeable that a breach or violation of the duties, statutes, regulations, responsibilities, requirements, and standards applicable to the operation of the Atlantic Sewage Tanker Truck would probably result in serious injury or death to other persons on and about the public roadways.

39.     At all relevant times Turner knew and/or should have known that the Atlantic Sewage Tanker Truck, due to the fact that its size and weight are greater than other motor vehicles, posed a greater risk of serious injury and death to other persons on and about the roadways if it was not operated properly, carefully, safely, and in accordance with all applicable duties, laws, statutes, and regulations.

40.     Operating large and heavy commercial motor vehicles was an essential part of Turner's employment with Atlantic Sewage.

8

41.    On and before July 1, 2021 Turner was familiar with and/or should have been familiar with the traffic lights, roads, traffic, road conditions, and driving patterns in and around the Outer Banks of North Carolina, including the area of the Intersection.

42.    On and before July 1, 2021 Turner knew, was required to know, and/or should have known that having a full set of working and fully fit, properly adjusted, and operable brakes for a large and heavy commercial motor vehicle such as the Atlantic Sewage Tanker Truck was necessary for the safe operation of the vehicle.

43.    On and/or before July 1, 2021 Turner knew, was required to know, and/or should have known that one or more of the brakes on the Atlantic Sewage Tanker Truck were not properly adjusted, were unsafe, provided insufficient braking force, or otherwise failed to comply with the duties and responsibilities imposed by federal and state statutes, regulations, industry standards, and the common law upon Turner.

44.    On and/or before July 1, 2021 Turner knew, was required to know, and/or should have known that the Atlantic Sewage Tanker Truck had not been properly and timely inspected, maintained, and repaired as required by federal and state statutes, regulations, industry standards, and the common law.

45.    On and/or before July 1, 2021 Turner knew, was required to know, and/or should have known that one or more of the brakes on the Atlantic Sewage Tanker Truck were in a condition which violated the duties and requirements imposed by applicable federal and state statutes, regulations, the FMCSRs (including 49 C.F.R. Sections 393.47 and 393.48), the NCMCSRs, N.C.G.S. § 20-124, industry standards, and the common law.

46.    On and before July 1, 2021 Turner knew, was required to know, and/or should have known that the condition of one or more of the brakes on the Atlantic Sewage Tanker Truck was

9

such that it was unlawful, unreasonable, and unsafe to operate the Atlantic Sewage Tanker Truck on the public roadways at the time of the Collision.

47. Nonetheless, on July 1, 2021, Turner chose to, and did in fact, operate the Atlantic Sewage Tanker Truck on Highway 158 despite the vehicle's unfit condition.

48. At all relevant times Turner knew, was required to know, and/or should have known that the applicable federal and state laws and regulations imposed numerous requirements upon commercial motor vehicle drivers, including without limitation the following:

> No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

49 *C.F.R.* § 392.3.

49. On July 1, 2021 Turner was driving the Atlantic Sewage Tanker Truck even though he knew, was required to know, and/or should have known that his ability or alertness was so impaired, or was so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle.

50. Due to his unfit condition, it was a violation of federal and state law for Turner to be driving the Atlantic Sewage Tanker Truck prior to and at the time of the Collision.

51. On July 1, 2021 at and prior to the time of the Collision Turner negligently breached and violated the duties and requirements imposed upon him in at least one or more of the following respects:

> a) failed to keep a proper lookout;
>
> b) failed to keep the Atlantic Sewage Tanker Truck under proper control;
>
> c) drove the Atlantic Sewage Tanker Truck at a speed and in a manner that was unreasonable and dangerous under all the circumstances (including the characteristics,

condition, and weight of the truck and its load, the shiftable and moveable nature of the load, the tiredness of the driver, traffic conditions, road conditions, traffic signals, and the other circumstances);

       d)     failed to be alert for, monitor, account for, and respond to traffic control signals, road conditions, traffic conditions, and other conditions;

       e)     failed to obey traffic signals;

       f)     failed to reduce his speed as reasonably required under the circumstances;

       g)     failed to slow for the yellow and then stop for the red Traffic Lights Controlling Northbound Traffic;

       h)     changed lanes in an improper, unreasonable, dangerous, and unlawful manner;

       i)     operated the large and heavy Atlantic Sewage Tanker Truck at an unreasonable speed and in a reckless manner that was likely to lead it to go out of control and overturn;

       j)     failed to take proper or reasonable measures (including by use of horns, brakes, and lights) to avoid a collision or to minimize the harm caused by his negligence;

       k)     followed the vehicles in front of the Atlantic Sewage Tanker Truck too closely;

       l)     failed to yield the right of way to a vehicle in the Intersection;

       m)     entered the Intersection against the steady red Traffic Lights Controlling Northbound Traffic;

       n)     struck multiple vehicles as he went into, through, and beyond the Intersection;

       o)     drove the Atlantic Sewage Tanker Truck in a manner such that it unlawfully and improperly entered the southbound lanes while traveling northbound;

       p)     operated the Atlantic Sewage Tanker Truck after working excessive hours and while in an unfit and excessively tired and fatigued condition;

       q)     operated the Atlantic Sewage Tanker Truck without performing required inspections, without putting it in a good and fit condition, and while it was not in a fit and properly equipped condition;

       r)     caused his vehicle to leave its lane and suddenly swerve into the right-hand turn lane but then proceeded straight ahead;

       s)     violated various statutory rules of the road, including but not limited to North Carolina General Statutes §§ 20-140 (reckless driving); 20-141 (unsafe and unlawful

speed); 20-141.4 (misdemeanor death by vehicle); 20-141.6 (aggressive driving causing serious bodily injury); 20-146 (improper lane change); 20-150.1 (improper passing on the right); 20-152 (following too closely); 20-155 (failure to yield the right of way); 20-158 (failure to obey a red light); 20-160.1 (failure to yield the right of way causing serious bodily injury); and otherwise to be proven at the trial of this matter;

       t)      violated various statutory and regulatory provisions and requirements, including but not limited to N.C.G.S. § 20-124 (operating a vehicle with brakes that failed to meet statutory requirements); 49 C.F.R. § 392.7 (operating a commercial motor vehicle with brakes that failed to meet regulatory requirements), 49 C.F.R § 396.3 (improper maintenance), 49 C.F.R § 396.7 (operating a vehicle likely to cause a collision), 49 C.F.R § 396.13 (failure to make pre-trip and post-trip inspections); 49 C.F.R. §§ 396.17 through 396.23 and including Appendix G (failure to perform required inspection, maintenance, and repair); 49 C.F.R § 392.3 (ill or fatigued driver); 23 C.F.R. § 658 and 17 N.C.G.S. § 20-118 (excessive weight); and otherwise to be proven at the trial of this matter;

       u)      failed to meet all knowledge, qualifications, fitness, driving skills, medical, and other requirements of the FMCSRs, the NCMCSRs, other federal and state laws and regulations, industry standards, and the common law at all times with respect to drivers of commercial motor vehicles;

       v)      failed to meet all vehicle condition, equipment, inspection, fitness, weight, safety, and other requirements of the FMCSRs, the NCMCSRs, other federal and state laws and regulations, industry standards, and the common law at all times with respect to the Atlantic Sewage Tanker Truck;

       w)      was careless, reckless, and negligent in the foregoing respects and in other respects to be proven at the trial of this matter.

52.     Each and all of the duties alleged herein were owed by Turner to Judy Marks and all other drivers, passengers, and pedestrians on and about the public roads.

53.     The above-recited breaches by Turner of his duties and responsibilities as alleged herein constituted negligence, negligence per se, gross negligence, and willful or wanton negligence which proximately caused the wrongful death of Judy Marks on July 1, 2021.

54.     The statutes and regulations referred to herein were enacted and adopted for public safety and for the benefit and protection of the safety of persons on and near the public roadways, including Judy Marks.

12

55.     The statutes and regulations referred to herein were enacted and adopted to protect against the type of harm suffered by Judy Marks as a result of the Collision.

56.     Turner's violations of statutes and regulations referred to herein proximately caused the injuries to and death of Judy Marks on July 1, 2021.

57.     Turner's violations of the statutes and regulations referred to herein constitute negligence per se (except as specifically provided otherwise in the statutes and regulations).

58.     The Administrator is entitled to recover all wrongful death damages permitted under North Carolina law for the wrongful death of Judy Marks, including:

    a)     Expenses for care, treatment, and hospitalization of Judy Marks incident to the injuries resulting in her death;

    b)     Compensation for the pain and suffering of Judy Marks due to the Collision and her injuries caused by the Collision;

    c)     Compensation for the reasonable funeral expenses of Judy Marks;

    d)     Compensation for the present monetary value of Judy Marks to the statutory beneficiaries (Dick Marks, Maureen M. Montgomery, Kathryn M. Anderson, and Richard A. Marks III) entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

        i.     Services, protection, care, and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

        ii.     Society, companionship, comfort, guidance, kindly offices, and advice of the decedent to the persons entitled to the damages recovered, and other like aspects of the relational loss of Judy Marks;

    e)     and all other death damages permitted under North Carolina law.

59.     The Administrator is also entitled to have and recover punitive damages as a result of Turner's willful or wanton negligence. *See* N.C.G.S. § 1D-15(a)(3) and case law.

60.     Turner's wrongful conduct alleged herein constituted and involved the conscious and reckless disregard of and indifference to the rights and safety of others in that he made a

13

reckless decision to drive the heavily loaded and ill-maintained Atlantic Sewage Tanker Truck on Highway 158 at a speed and in a manner which he knew or should have known was reasonably likely to result in serious injury, damage, or other harm. *See* N.C.G.S. § 1D-5(7) and case law.

61.     Turner made a conscious and reckless decision to continue at a dangerous speed towards the Intersection without attempting to stop (and without slowing his speed at all or significantly, and perhaps even while increasing his speed) for a period of time after he knew the Traffic Lights Controlling Northbound Traffic facing him had turned yellow and after he knew it was certain or highly likely the Traffic Lights Controlling Northbound Traffic would be red before he arrived at the Intersection, and thus other vehicles would be entering the Intersection when he entered the Intersection.

62.     Atlantic Sewage is liable for damages and harm caused by the negligence, negligence per se, gross negligence, and willful or wanton negligence of Turner under agency law, the law of respondeat superior, motor carrier regulations and liability law, and other applicable principles of law.

63.     Atlantic Sewage participated in or condoned one or more of Turner's willful or wanton acts or omissions (including requiring, authorizing or permitting the Atlantic Sewage Tanker Truck to be operated in an unsafe condition and by an unfit driver), and thus Atlantic Sewage is liable for punitive damages, too. *See* N.C.G.S. § 1D-15(c) and case law.

### Count II—Negligence
### (vs. Atlantic Sewage only)

64.     The Administrator incorporates by reference the allegations set forth in paragraphs 1-63 as if fully restated herein.

65.     At all relevant times Atlantic Sewage was subject to all provisions, requirements, duties, and responsibilities imposed by the FMCSRs and NCMCSRs, all applicable federal and

state statutes and regulations, industry standards, and the common law with respect to its own actions and omissions and actions and omissions of Turner, including actions and omissions relating to the qualifications, hiring, retention, monitoring, and fitness of Turner and actions and omissions relating to the condition, inspection, maintenance, repair, operation, and driving of the Atlantic Sewage Tanker Truck.

66. At all relevant times Atlantic Sewage owed the following duties to drivers, passengers, and pedestrians on and about public roads (including Judy Marks) to use at least reasonable care under the circumstances:

a) to operate, inspect, equip, and repair the Atlantic Sewage Tanker Truck in a manner consistent with the standard of care for a commercial motor carrier, in compliance with all applicable federal and state statutes, regulations, and laws, and in a manner reasonable under the circumstances;

b) to ensure that its commercial motor vehicle drivers meet all knowledge, qualifications, fitness, driving skills, medical, and other requirements of the FMCSRs, the NCMCSRs, other federal and state law laws and regulations, industry standards, and the common law at all times with respect to operating the Atlantic Sewage Tanker Truck;

c) to meet all vehicle condition, equipment, inspection, fitness, weight, safety, and other requirements of the FMCSRs, the NCMCSRs, other federal and state laws and regulations, industry standards, and the common law at all times with respect to the Atlantic Sewage Tanker Truck;

d) to monitor the Atlantic Sewage Tanker Truck and related equipment, to follow all applicable safety programs and plans, and to take all other steps and measures to ensure that the large and heavy commercial motor vehicles used were operated and driven prudently and safely.

67. At all relevant times Atlantic Sewage knew and/or should have known that it was reasonably foreseeable that a breach or violation of the duties, statutes, regulations, responsibilities, requirements, and standards applicable to it and its operation of the Atlantic Sewage Tanker Truck would foreseeably and probably result in serious injury or death to other persons on and about the public roadways.

15

68.     At all relevant times Atlantic Sewage knew and/or should have known that the Atlantic Sewage Tanker Truck, due to the fact that its size and weight is greater than other motor vehicles, posed a greater risk of serious injury and death to other persons on and about the roadways if it was not operated properly, carefully, safely, and in accordance with all applicable duties, laws, statutes, and regulations.

69.     Operating large and heavy commercial motor vehicles was an essential part of the business of Atlantic Sewage.

70.     Atlantic Sewage was aware that having knowledgeable, fit, and qualified drivers to operate its large and heavy commercial motor vehicles was an essential part of its work.

71.     On and before July 1, 2021 Atlantic Sewage was familiar with and/or should have been familiar with the traffic lights, roads, traffic, road conditions, and driving patterns in and around the Outer Banks of North Carolina, including the area of the Intersection.

72.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that having a full set of working and fully fit, properly adjusted, and operable brakes for large and heavy commercial motor vehicles (including the Atlantic Sewage Tanker Truck) was necessary for the safe operation of such vehicles.

73.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that having fully knowledgeable, qualified, and fit drivers for the large and heavy commercial motor vehicles operated and used by them was necessary for the safe and lawful operation of such vehicles in and around the Outer Banks of North Carolina, including the area of the Intersection.

74.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that one or more of the brakes on the Atlantic Sewage Tanker Truck were not

16

properly adjusted, were unsafe, provided insufficient braking force, or otherwise failed to comply with the duties and responsibilities imposed by federal and state statutes, regulations, industry standards, and the common law upon Atlantic Sewage.

75.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that the Atlantic Sewage Tanker Truck had not been properly and timely inspected, maintained, and repaired as required by federal and state statutes, regulations, industry standards, and the common law.

76.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that one or more of the brakes on the Atlantic Sewage Tanker Truck were in a condition which violated the duties and requirements imposed by applicable federal and state statutes, regulations, the FMCSRs (including 49 C.F.R. Sections 393.47 and 393.48), the NCMCSRs, N.C.G.S. § 20-124, industry standards, and the common law.

77.     On and before July 1, 2021 Atlantic Sewage knew, was required to know, and/or should have known that the condition of one or more of the brakes on the Atlantic Sewage Tanker Truck was such that it was unlawful, unreasonable, and unsafe to operate the Atlantic Sewage Tanker Truck on the public roadways at the time of the Collision.

78.     Nonetheless, on July 1, 2021, Atlantic Sewage negligently authorized, allowed, and permitted the operation of the Atlantic Sewage Tanker Truck on Highway 158 despite the vehicle's unfit condition.

79.     On July 1, 2021 Atlantic Sewage caused and permitted Turner to drive the Atlantic Sewage Tanker Truck even though Atlantic Sewage knew, was required to know, and/or should have known that Turner was not a fully fit and qualified driver.

80.     At all relevant times Atlantic Sewage knew, was required to know, and/or should have known that the applicable federal and state laws and regulations imposed numerous requirements upon it including without limitation the following:

> No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

49 C.F.R. § 392.3.

81.     On July 1, 2021 Atlantic Sewage caused and permitted Turner to drive the Atlantic Sewage Tanker Truck even though it knew, was required to know, and/or should have known that Turner's ability or alertness was so impaired, or was so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the Atlantic Sewage Tanker Truck. Due to his unfit condition, it was a violation of federal and state law for Atlantic Sewage to cause or permit Turner to drive the Atlantic Sewage Tanker Truck prior to and at the time of the Collision.

82.     On July 1, 2021 at and prior to the time of the Collision Atlantic Sewage negligently breached and violated the duties and requirements imposed upon it in at least one or more of the following respects:

a)     Atlantic Sewage caused and allowed Turner to operate the Atlantic Sewage Tanker Truck after working excessive hours and while in an unfit and excessively tired and fatigued condition;

b)     Atlantic Sewage caused and allowed Turner to operate the Atlantic Sewage Tanker Truck without performing required inspections, without putting it in a good and fit condition, and while it was not in a fit and properly equipped condition;

c)     Atlantic Sewage violated various statutory and regulatory provisions and requirements, including but not limited to N.C.G.S. § 20-124 (operating a vehicle with brakes that failed to meet statutory requirements); 49 C.F.R. § 392.7 (operating a commercial motor vehicle with brakes that failed to meet regulatory requirements), 49

18

C.F.R § 396.3 (improper maintenance), 49 C.F.R § 396.7 (operating a vehicle likely to cause a collision), 49 C.F.R § 396.13 (failure to make pre-trip and post-trip inspections); 49 C.F.R. §§ 396.17 through 396.23 and including Appendix G (failure to perform required inspection, maintenance, and repair); 49 C.F.R § 392.3 (ill or fatigued driver); 23 C.F.R. § 658 and 17 N.C.G.S. § 20-118 (excessive weight); and otherwise to be proven at the trial of this matter;

     d)     Atlantic Sewage failed to ensure that Turner met all knowledge, qualifications, fitness, driving skills, medical, and other requirements of the FMCSRs, the NCMCSRs, other federal and state law laws and regulations, industry standards, and the common law with respect to Turner;

     e)     Atlantic Sewage failed to meet all vehicle condition, equipment, inspection, fitness, weight, safety, and other requirements of the FMCSRs, the NCMCSRs, other federal and state laws and regulations, industry standards, and the common law at all times with respect to the Atlantic Sewage Tanker Truck;

     f)     Atlantic Sewage failed to monitor its equipment and drivers, to adopt safety programs and plans, and to take all other steps and measures to ensure that its large and heavy commercial motor vehicles were operated prudently and safely;

     g)     Atlantic Sewage required or permitted Turner to drive a vehicle that it knew or should have known was not fit or was unsafe to be on the roadway;

     h)     Atlantic Sewage was careless, reckless, and negligent in the foregoing respects and in other respects to be proven at the trial of this matter.

83.     Each and all of the duties alleged herein were owed by Atlantic Sewage to Judy Marks and all other drivers, passengers, and pedestrians on and about the public roads.

84.     The above-recited breaches by Atlantic Sewage of its duties and responsibilities constituted negligence, negligence per se, gross negligence, and willful or wanton negligence which proximately caused the wrongful death of Judy Marks on July 1, 2021.

85.     The statutes and regulations referred to herein were enacted and adopted for public safety and for the benefit and protection of the safety of persons on and near the public roadways, including Judy Marks.

86.     The statutes and regulations referred to herein were enacted and adopted to protect against the type of harm suffered by Judy Marks as a result of the Collision.

19

87.     Atlantic Sewage's violations of statutes and regulations referred to herein constitute negligence per se (except as specifically provided otherwise in the statutes and regulations).

88.     Atlantic Sewage's violations of statutes and regulations referred to herein proximately caused the injuries to and death of Judy Marks on July 1, 2021.

89.     The Administrator is entitled to recover all wrongful death damages permitted under North Carolina law for the wrongful death of Judy Marks as set forth in paragraph 58 of this Complaint.

90.     The Administrator is also entitled to have and recover punitive damages against Atlantic Sewage as a result of its willful or wanton negligence. *See* N.C.G.S. § 1D-15(a)(3) and case law.

91.     Atlantic Sewage's wrongful conduct alleged herein constituted and involved the conscious and reckless disregard of and indifference to the rights and safety of others, which Atlantic Sewage knew or should have known was reasonably likely to result in injury, death, damage, or other harm. *See* N.C.G.S. § 1D-5(7) and case law.

92.     Atlantic Sewage consciously and recklessly disregarded the rights and safety of others on the public roadway (including Judy Marks) when Atlantic Sewage decided to require, authorize, permit, or otherwise allow Turner to operate the heavily loaded and ill-maintained Atlantic Sewage Tanker Truck, on the public roadway when Atlantic Sewage knew or should have known that the driver and/or vehicle was unfit and thus reasonably likely to result in serious injury, damage, or other harm.

## Count III—Negligent Entrustment
### (vs. Atlantic Sewage only)

93.     The Administrator incorporates by reference the allegations set forth in paragraphs 1-92 as if fully restated herein.

94.    At all times relevant, Atlantic Sewage owned the Atlantic Sewage Tanker Truck.

95.    On and before July 1, 2021, Atlantic Sewage knew, or by the exercise of due care should have known, that Turner was an incompetent or reckless driver who was likely to cause injury to others in his operation of the Atlantic Sewage Tanker Truck in that Turner had worked excessive hours the week of July 1, 2021, and thus was dangerously fatigued and was likely to be inattentive on the morning of July 1, 2021.

96.    On and before July 1, 2021, Atlantic Sewage knew, or by the exercise of due care should have known, that the Atlantic Sewage Tanker Truck was in an unfit and unsafe condition in that the Atlantic Sewage Tanker Truck had brakes which were in an unfit, unadjusted, dangerous, and unlawful condition.

97.    Notwithstanding the above, on and before July 1, 2021, Atlantic Sewage entrusted the Atlantic Sewage Tanker Truck to Turner and required, allowed, permitted, or authorized Turner to operate the Atlantic Sewage Tanker Truck on Highway 158 on the morning of July 1, 2021.

98.    As a direct and proximate result of Atlantic Sewage's negligent entrustment of the Atlantic Sewage Tanker Truck to Turner on and before July 1, 2021, Judy Marks was severely and fatally injured in the Collision.

99.    The Administrator is entitled to recover all wrongful death damages permitted under North Carolina law for the wrongful death of Judy Marks as set forth in paragraph 58 of this Complaint.

100.    The Administrator is also entitled to have and recover punitive damages against Atlantic Sewage as a result of its willful or wanton negligent entrustment of the Atlantic Sewage Tanker Truck to Turner on and before July 1, 2021.

## Count IV—Negligent Supervision

### (vs. Atlantic Sewage only)

101. The Administrator incorporates by reference the allegations set forth in paragraphs 1-100 as if fully restated herein.

102. Turner committed one or more tortious acts resulting in injury to Judy Marks.

103. Prior to Turner's tortious act(s), Atlantic Sewage knew or had reason to know of Turner's incompetency.

104. As a direct and proximate result of Atlantic Sewage's negligent supervision of Turner on and before July 1, 2021, Judy Marks was severely and fatally injured in the Collision.

105. The Administrator is entitled to recover all wrongful death damages permitted under North Carolina law for the wrongful death of Judy Marks as set forth in paragraph 58 of this Complaint.

106. The Administrator is also entitled to have and recover punitive damages against Atlantic Sewage as a result of its willful or wanton negligent supervision of Turner on and before July 1, 2021.

### PRAYER FOR RELIEF

WHEREFORE, Richard A. Marks, Jr., Administrator of the Estate of Judith Schoppet Marks, by and through the undersigned counsel, having complained of Defendants, Billy Ray Turner and Atlantic OBX, Inc., a/k/a Atlantic Sewage Control, now prays this Honorable Court to grant and enter judgment affording the following relief:

A) That the Administrator have and recover judgment against the Defendants, Billy Ray Turner and Atlantic OBX, Inc., a/k/a Atlantic Sewage Control, jointly and severally, for the wrongful death of Judy Marks, in an amount in excess of $75,000, to include all actual, direct, compensatory, and punitive damages permitted under North Carolina law;

B)    That the Administrator have and recover all recoverable costs, interest, and attorney's fees to the greatest extent permitted by North Carolina law;

C)    That the Administrator have a **TRIAL BY JURY** on all issues so triable; and

D)    That the Administrator have and recover all such other and further relief as may be just and proper in the discretion of this Honorable Court.

This the 1st day of March, 2022.

By:    /s/ John C. Shea
       John C. Shea
       Virginia State Bar # 17436
       jshea@marksandharrison.com
       Lee J. Bujakowski
       Virginia State Bar # 83697
       lbujakowski@marksandharrison.com
       MARKS & HARRISON, P.C.
       1500 Forest Avenue, Suite 100
       Richmond, VA 23229
       Telephone: (804) 282-0999
       Facsimile: (804) 288-1330
       *Counsel for Plaintiff*
       [Notice of Special Appearance Pending]


       /s/ Jon Ward
       Jon Ward
       North Carolina State Bar # 37122
       jonward@pckb-law.com
       PINTO COATES KYRE & BOWERS, PLLC
       3203 Brassfield Road
       Greensboro, NC 27410
       Telephone: (336) 282-8848
       Facsimile: (336) 282-8409
       *Local Civil Rule 83.1(d) Counsel for Plaintiff*

23